United States Trust Company of New York, as Sole Surviving Trustee of the Trusts Created for Harry P. Bingham and Others by Oliver H. Payne, Plaintiff, v. Harry P. Bingham et al., Defendants. Dorothy L. Kniffin, as General Guardian of the Property of Norah Knight and Another, Infants, Appellant; United States Trust Company of New York, as Executor and Trustee, et al., Respondents.

Argued January 12, 1950; decided April 13, 1950.

*Mortimor S. Gordon, Julius Henry Cohen, Harry Balterman* and *Albert I. Da Silva* for appellant. I. The conflict of interest disqualified the trust company. The beneficiaries of the Ledyard, Jr., estate were therefore necessary parties. (*Meinhard v. Salmon,* 249 N. Y. 458; *Earle v. Earle,* 93 N. Y. 104; *Matter of Kohler,* 231 N. Y. 353; *Agne v. Schwab,* 123 App. Div. 746; *Matter of Miner,* 39 Misc. 605; *Riggs v. Cragg,* 89 N. Y. 479; *Fisher v. Banta,* 66 N. Y. 468; *Walker v. Devereaux,* 4 Paige Ch. 229; *Matter of Eitingon,* 70 N. Y. S. 2d 883, 270 App. Div. 1009, 296 N. Y. 842.) II. Substantial questions of fact remain to be tried before the right of Ledyard, Jr's., estate to commissions on the increment to corpus can be determined as a matter of law. (*Matter of Richardson,* 250 App. Div. 199; *Matter of Hawley,* 142 Misc. 396.) III. The trust company's breach of trust cannot be interred. (*Meinhard v. Salmon,* 249 N. Y. 458.) IV. Vacating the judgment is the only real remedy. (*Wendt v. Fischer,* 243 N. Y. 439; *Matter of Raymond v. Estate of Davis,* 248 N. Y. 67.)

*John M. Harlan* and *James E. Nickerson* for United States Trust Company of New York, respondent. Appellant's wards were not necessary parties to the within action. The proper forum for the litigation of the charges against the executor is in the pending proceedings in the Surrogate's Court, Nassau County. (*Fisher* v. *Banta,* 66 N. Y. 468; *Matter of Hodgman,* 69 Hun 484, 140 N. Y. 421; *Matter of Fletcher,* 173 Misc. 711; *Matter of Chyat,* 60 N. Y. S. 2d 390.)

*Emil Morosini, Jr.,* and *R. Emmet Digney,* in person, for R. Emmet Digney, respondent. I. There was no defect of parties in this action. (*Matter of Straut,* 126 N. Y. 201; *Jackson* v. *Tallmadge,* 246 N. Y. 133; *Bump* v. *Gilchrist,* 52 Hun 6, 127 N. Y. 668; *Wetmore* v. *Hegeman,* 88 N. Y. 69; *Korn* v. *Metropolitan Elevated Ry. Co.,* 59 Hun 505, 129 N. Y. 648; *Roberts* v. *New York Elevated R. R. Co.,* 155 N. Y. 31; *Colorado & Southern Ry. Co.* v. *Blair,* 214 N. Y. 497; *Havana City Ry. Co.* v. *Ceballos,* 49 App. Div. 263; *First Nat. Bank of Glens Falls* v. *Parks,* 245 App. Div. 776, 270 N. Y. 506; *Bulova* v. *E. L. Barnett, Inc.,* 194 App. Div. 418.) II. In this action, the executor of the estate of Ledyard, Jr., the deceased cotrustee, was obliged to account only to the beneficiaries of the Payne trusts for the acts of said deceased cotrustee, and there could not be litigated therein any question concerning such executor's responsibility or accountability to the distributees of said deceased trustee's estate. III. There is no legal ground for the allowance of additional compensation to the estate of the deceased trustee. (*Matter of Bushe,* 227 N. Y. 85; *Matter of Barker,* 230 N. Y. 364; *Matter of Reckford,* 181 Misc. 211; *Matter of Wandling,* 181 Misc. 292; *Matter of Mohr,* 167 Misc. 523; *Durham* v. *Perkins,* 270 App. Div. 739, 296 N. Y. 514; *Matter of Ziegler,* 168 App. Div. 735, 218 N. Y. 544; *Conger* v. *Conger,* 105 App. Div. 589, 185 N. Y. 554; *Matter of Worthington,* 141 N. Y. 9; *Beard* v. *Beard,* 140 N. Y. 260.)

LOUGHRAN, Ch. J. On September 7, 1915, Oliver H. Payne executed four deeds of trust in each of which he appointed Lewis Cass Ledyard, Sr., and Lewis Cass Ledyard, Jr., as cotrustees. Each of these instruments also granted to the trustees a right to reasonable compensation, to be retained by them out of the income of the trusts, and further provided that

their right to compensation in respect of the trust capital should not be affected by their resignation or death prior to the termination of the trusts.

Ledyard, Sr., died in 1932 and Ledyard, Jr., then appointed United States Trust Company of New York to be cotrustee with him. Ledyard, Jr., died in 1936, leaving a last will and testament which made the same Trust Company his sole executor.

In 1938 the Trust Company commenced this action as surviving trustee of the Payne trusts. The relief sought was a judicial settlement of the cotrustees' accounts for the period between a prior accounting by them in 1933, and the date of the death of Ledyard, Jr., in 1936. The Trust Company named as defendants the beneficiaries of the Payne trusts and itself as executor of the estate of Ledyard, Jr., the deceased cotrustee. As such executor, the Trust Company made a claim on behalf of the estate of Ledyard, Jr., for additional commissions on the principal of the Payne trusts.

A referee who heard that claim rejected it on the merits. Final judgment in this accounting action was subsequently entered in 1939. The accounts of the cotrustees were thereby settled and the claim of the estate of Ledyard, Jr., for additional commissions disallowed.

In 1948 Dorothy Ledyard Kniffin — a daughter of Ledyard, Jr. — as general guardian of infants who are beneficiaries of his estate but not of the Payne trusts, moved herein for an order vacating that final judgment and permitting her to reassert the claim of the estate of Ledyard, Jr., for the commissions that were disallowed in 1939. She attacked that judgment as not binding upon her wards because the Trust Company had not named them as parties defendant in the action. Special Term denied her application and the Appellate Division unanimously affirmed. Mrs. Kniffin then brought the case here by our leave.

The sole question thus presented is simply this: Were the beneficiaries of the estate of Ledyard, Jr., indispensable parties to this action for a settlement of the accounts of the trustees of the Payne trusts? The answer, we think, must be in the negative.

As appellant here Mrs. Kniffin says her wards were indispensable parties to this action because the Trust Company

appeared therein as the executor of the estate of Ledyard, Jr., and also as the sole accounting trustee of the Payne trusts. On that basis she would have liability imposed upon the beneficiaries of the Payne trusts for an asserted breach by the Trust Company of its fiduciary duty as executor of the estate of Ledyard, Jr. But the Trust Company was authorized to prosecute the claim for commissions on behalf of the beneficiaries of the estate of Ledyard, Jr., without joining them with it (Civ. Prac. Act, § 210). The beneficiaries of the Payne trusts were in no way responsible for the appearance of the Trust Company in a dual capacity. If, in fact, the Trust Company was guilty of a breach of fiduciary duty in handling the claim of the estate of Ledyard, Jr., for commissions, the remedy for that alleged dereliction was to compel the Trust Company to account therefor to the estate of Ledyard, Jr., as executor of that estate.

In short, on this record — so far as any liability of the beneficiaries of the Payne trusts is concerned — the judgment entered in this action in 1939 is in all respects conclusive.

*Fisher* v. *Banta* (66 N. Y. 468), cited by appellant, is a wholly different case both in fact and in principle. There the administrator of an estate attempted to account to himself as executor of a deceased beneficiary of the same estate. In the present case, the Trust Company did not account to itself as executor of the estate of Ledyard, Jr. On the contrary, the Trust Company here accounted as trustee of the Payne trusts to the beneficiaries thereof and not to itself in any capacity. (Cf. Surrogate's Ct. Act, § 262, subd. 10.)

The order should be affirmed, with costs.

DESMOND, J. (dissenting). This action was brought, more than ten years ago, by plaintiff United States Trust Company, for a judicial settlement of its accounts as sole surviving trustee (and the accounts of a cotrustee hereafter described) of several *inter vivos* trusts set up by Oliver H. Payne, and herein called the " Payne trusts ". From 1932 the Trust Company had been cotrustee thereof with Lewis Cass Ledyard, Jr., but the latter died on May 1, 1936, so that, thereafter the Trust Company was the sole fiduciary of the Payne trusts. But the Trust Company, by Ledyard's will, had become, in 1936, the latter's

executor, also, and from that duality of position arises the question before us on this appeal. Most simply stated, that question is: when, on this Payne trust accounting, a contest developed between the Trust Company, as sole Payne trustee, and the same Trust Company, as sole Ledyard executor, could the Trust Company, without notifying the Ledyard beneficiaries, act for the Ledyard estate in support of its claim against the Payne trusts, and, at the same time, act for the Payne trusts, in opposition to that same Ledyard claim? The contest was tried out, or an attempted or purported trial was had, with the Trust Company the sole proponent and the sole opponent of that claim, and the claim was disallowed. Now Ledyard's beneficiaries have moved to reopen the resulting judgment, so that they may appear in support of their testator's claim. The courts below have denied the application. I believe that refusal was wrong, and that it was violative of fundamental rules based on justice and fair dealing, and contrary to old and honored decisions, particularly *Fisher* v. *Banta* (66 N. Y. 468).

The right of these appellants (Ledyard's beneficiaries) to a reopening of the judgment against their estate, rendered without notice to them, does not rest on their assertions of bad faith on the part of the respondent Trust Company, nor can it be defeated by any attempt at this point to show that their claim had no merit. That they may possibly get, in a different proceeding (now pending) against the Trust Company, as *Ledyard's executor,* a surcharge against the Trust Company for its handling of this Ledyard claim against the Payne trust estates, is likewise unavailable as an answer to their demand that they be given a day in court against the *Payne* estates themselves, on that claim. The simple, unavoidable question here is as to whether the Trust Company, as claimant (for the Ledyard estate) could, alone and to the exclusion of anyone beneficially interested in the Ledyard estate, carry on a litigation against the alleged debtor (the Trust Company itself, as Payne trustee) and get a judgment therein which would conclude the Ledyard estate and its beneficiaries. I do not see how it is possible to give any but a negative answer to that question.

" It is elementary that the same person cannot be both plaintiff and defendant at the same time in the same action. It is

incongruous that the same person should direct and conduct both the prosecution and the defense of the same suit, no matter in what capacity he may appear. * * * And the rule has been applied where the same person sues and defends in different capacities." (*Globe & Rutgers Fire Ins. Co.* v. *Hines,* 273 F. 774, 777 [C.C.A. 2d], certiorari denied 257 U. S. 643). In *Smith* v. *City of Albany* (61 N. Y. 444, 445, 446), this court cited with approval Story on Agency, who declared it a rule of morality " that no man can faithfully serve two masters whose interests are in conflict. * * * And it is by no means necessary in cases of this sort that the agent should make any advantage by the bargain. Whether he has or not the bargain is without any obligation to bind the principal." In that same (*Smith* v. *City of Albany, supra*) opinion this court cited *Collier* v. *Munn* (41 N. Y. 143) wherein it is said that it is one of the duties of an executor to scrutinize a coexecutor's claim for compensation " for the single purpose of seeing to it that no improper employment or allowance was made for service rendered." (P. 447.) Here the trust company's " scrutiny " of the claim of its deceased coexecutor for $500,000 additional commissions consisted of defending against that claim, through one attorney, and advocating the selfsame claim, through another lawyer.

In *Willcox* v. *Smith* (26 Barb. 316, 351, 352) the strict rule was laid down, again with citations to Judge STORY, that a " double fiduciary " cannot make binding on beneficiaries, any dealings he, in one capacity, has with himself in his other fiduciary capacity. That a fiduciary of a creditor is bound to take all proper means to collect for the creditor's estate needs no citation of authority. That a fiduciary of a debtor has not only the right but the duty to interpose any available defenses to claims is settled, too (*Butler* v. *Johnson,* 111 N. Y. 204; *Matter of Taylor,* 251 N. Y. 257, 264). How can the same person perform both those duties, at the same time, and as to the same claim? This court held in *Fisher* v. *Banta* (*supra*) (to which we shall refer at greater length hereafter), and so have courts of other States held, that one who is acting as administrator of two different estates cannot take the side of either when their interests are hostile (*Matter of Clark,* 203 Iowa

224; *Thomas* v. *Chamberlain*, 39 Ohio St. 112, 122; *Caheen* v. *First Nat. Bank*, 230 Ala. 105). In *Fisher* v. *Hubbell* (65 Barb. 74, 89–90) which is, as we shall show in a later paragraph hereof, actually a decision at an early stage of the lawsuit of *Fisher* v. *Banta* (*supra*), (the leading and determinative authority on our question) this was said: "Here the executor of Charles Edward Banta, whose duty it is to see to the collection of the assets of the estate of which he is executor and to pay over the legacies, is also the administrator *de bonis non* of the estate which is claimed to be the debtor of Charles Edward Banta's estate. He cannot, as executor of Charles Edward, sue himself as administrator of Albert. (*Trustees etc.* v. *Stewart*, 27 *Barb.* 553.) So that without the necessity of imputing any fraudulent collusion or neglect, he stands in a position which is equivalent, in its effect, to a fraudulent collusion, or a refusal to sue ".

Having thus referred to some of the many strong expressions of the rule here controlling, I will sketch briefly the history of this Ledyard-against-Payne claim in this suit, and then show the impact thereon of *Fisher* v. *Banta* (*supra*).

When the Trust Company, as surviving Payne trustee, brought this accounting suit, it named itself, as Ledyard executor, as a defendant, and named the Payne beneficiaries, also, as parties, but did not join as defendant, or otherwise, any person interested in the Ledyard estate. In its prayer for judgment, however, the Trust Company tendered to the court the question as to whether any further commissions from the Payne trusts were due to either trustee, and prayed that " the unpaid balance thereof, if any, may be allowed under the directions of this court." An answer, on behalf of the Trust Company, as Ledyard executor, was then filed by an attorney who was employed in the office of the attorneys (the law firm of which Mr. Ledyard had been a member) who had filed the complaint for the Trust Company. That answer did not affirmatively allege any claim or right of the Ledyard estate to further compensation, but all concerned obviously understood that the Ledyard commissions claim was up for determination in the action. An order was thereafter made appointing a referee to hear and determine the issues and in due course the referee proceeded to hear and determine this disputed Ledyard claim. Respondent tells us that it is common practice for an account-

ing fiduciary to name his cofiduciary as either a coplaintiff or as a defendant, and common practice to have both parties represented by attorneys in the same firm. That may be true when both fiduciaries are alive and there is no dispute between them, or between one of them and the estate under settlement. But we find in this record a letter to the attorney who filed the Ledyard estate answer, from another attorney later retained to appear in this action for that estate, which is in part as follows: "Thank you for the copy of the answer which you served. I think this will help protect the Executor. I am not satisfied, however, in my own mind as yet that this fully protects the Executor. As you know, in the Surrogate's Court it is the practice, where one party is on two sides of the same fence, to vouch in everybody interested in the matter. So far as we have been able to determine there is no such practice in the Supreme Court but, under all the circumstances surrounding this situation, I think we should give most careful thought to whether or not we should initiate some such practice."

Not only was it thus suggested to plaintiff that "everybody interested in the matter" (which must have meant the Ledyard heirs, since Payne's were already in as parties) should be vouched in, but, a month earlier, another attorney consulted by plaintiff had written to the attorney who filed the Ledyard answer, a letter which concluded with the opinion that there were "substantial grounds for the making by his [Ledyard's] estate of a claim for additional compensation." Nonetheless, the Ledyard family were not made parties, or notified of the contest.

We are not here passing on proprieties, we are looking at a judgment to see if it concludes these appellants. At the trial before the referee, the attorneys now representing plaintiff appeared for it, and an attorney from another law firm represented the Trust Company as Ledyard executor. As counsel for the Ledyard estate, that outside attorney actively urged the payment of further commissions, and an affidavit in this record alleges, without contradiction, that the Payne trusts' attorney vigorously took the opposite position. No other party took sides in the matter. Thus the Trust Company, not only in theory but in fact, did what all the above-cited cases say it

could not do, that is, take, in its different capacities, both sides of the same issue. The referee disallowed the Ledyard claim, judgment was entered accordingly, and no appeal was taken therefrom.

*Fisher* v. *Banta* (66 N. Y. 468, *supra*) is the leading authority in this State. It seems to be argued here by respondent that the case holds no more than that, when an accounting party is executor or administrator for one of the parties to whom he is accounting in his first capacity, he must bring in, as added parties, those persons for whom he is acting in that second capacity. Since, argues respondent, the Trust Company here was accounting not to itself as Ledyard executor but to the Payne *cestuis que trustent,* who were made parties, therefore, says respondent, *Fisher* v. *Banta* (*supra*) has no bearing. That version of the *Fisher* v. *Banta* holding notices its form but ignores its substance. The situation was this: one Hubbell, executor of the will of Charles Edward Banta, became, also, administrator *de bonis non* of the estate of Albert Banta, father of Charles Edward. Hubbell being, like this plaintiff, erroneously of the opinion that he could carry on a lawsuit with himself, filed, in the Albert estate, an accounting of which he gave notice to himself as executor of Charles Edward's estate, but no notice to any of Charles Edward's distributees. In due time Hubbell entered a decree solemnly discharging him in the Charles Edward Banta estate. That earlier accounting is described in *Fisher* v. *Banta,* but *Fisher* v. *Banta* was a subsequent suit, instituted by Charles Edward's heirs to construe both wills, and to enforce claims which they asserted against the Albert estate via Charles Edward's estate. Hubbell sought a dismissal of that second lawsuit, on the ground that these plaintiffs, in the new suit, were concluded by the prior accounting decree. The General Term (65 Barb. 74, above quoted from and for some reason styled " *Fisher* v. *Hubbell* " rather than " *Fisher* v. *Banta* ", as was the later title in this court) dealt quite summarily with that defense, ruling that the accounting decree could not conclude the plaintiffs (Charles Edward's beneficiaries) who were not served in that prior accounting. Treating Charles Edward's heirs as creditors of the two estates because of the nonpayment to them of their shares under the wills, the General

Term held that, as such creditors, those beneficiaries could, under the circumstances (same person representing both estates), sue in equity for whatever relief should be found appropriate. The reference in that opinion, and in the subsequent *Fisher* v. *Banta* opinion (66 N. Y. 468, *supra*), to the prior accounting was only by way of showing the nonconclusiveness thereof. The real substance of both the General Term and Court of Appeals opinions is this: that a double fiduciary cannot conclude either set of beneficiaries by a judgment in a suit to which they are not parties, and that, despite such a judgment, they have a complete right to be heard in support of any claim against either estate. Respondent's recitals of the incidental factual and procedural differences between the present case and *Fisher* v. *Banta,* leaves undisturbed the true inwardness of *Fisher* v. *Banta*. In that suit, the people who really stood to gain ignored the previous litigation and started a plenary action — here they ask to be made parties to the earlier suit. The differences are superficial.

Respondent cites *Matter of Hodgman* (140 N. Y. 421). The appellant in that case was one of several executors named in her husband's will. As such she asserted that a claim by the estate of one of her coexecutors, against her husband's estate, was unfounded. She called that matter to the attention of the court and of her fellow beneficiaries but the court ruled against her contention and in favor of her coexecutor's estate. The widow alone attempted to appeal but the court held that she had no standing as an appellant, because the decision below had no effect on her own rights in the estate of her husband, and those who would be financially affected (her husband's residuaries) were content with the adjudication from which she was attempting a gratuitous appeal. If the question there had been as to the rights of the *deceased coexecutor's beneficiaries* to be parties to the action, the situation would be like the one in the present case. But no such matter was discussed in the *Hodgman* opinion. The holding was that, so long as the persons adversely affected acquiesced in the decision adverse to them, the widow, not so affected, could not appeal. The question we have here is not answered, one way or the other, in *Matter of Hodgman (supra).*

Another objection by respondent — that appellants were not entitled to be parties since only " remotely " or " contingently, " interested — is specifically overruled in *Fisher* v. *Banta* (see page 481 of 66 N. Y., *supra*).

Respondent repeatedly points out that it was the Payne trusts that were here accounted for, that the persons named in those trusts were all parties, and that neither Ledyard nor his estate was in any sense a beneficiary of the Payne trusts. But creditors, as well as remaindermen, and, indeed, ahead of remaindermen, are directly interested in the disposition of trust property, and so Ledyard's executor (and Ledyard's beneficiaries, when conflict appeared) were, because of the Ledyard claim for added commissions, as necessary parties as any one else. Are not the holders of disputed claims, whatever their relationship to a trustor, adversaries of the estate itself on an accounting? The complaint here recognizes that, since the prayer for judgment is not only that Ledyard's estate be discharged of liability to the Payne trusts, but also that there be determined, as a separate issue, the Ledyard claim. That issue went to trial and judgment, and it is pretty late now to say that no such issue existed, or that Ledyard's estate was a mere nominal, or formal, party to this action. In truth, the trial before the referee was of the same kind of issue as if Ledyard, in his lifetime, had sued Payne, during the latter's life, for unpaid services.

To repeat, the question here is not as to the worthiness of the Ledyard demand, nor as to the good faith of plaintiff. We are concerned with a fundamental proposition: the right of a creditor to be heard, personally or through a disinterested representative, in a proceeding which is actually adversary.

The order should be reversed and the motion granted, with costs in all courts.

LEWIS, CONWAY, DYE and FULL, JJ., concur with LOUGHRAN, Ch. J.; DESMOND, J., dissents in opinion in which FROESSEL, J., concurs.

Order affirmed.